UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>DESIREE KATHERINE RODRIGUEZ,<br><br>        Defendant. | Case No. 3:21-cr-00334-DCN-4<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Desiree Katherine Rodriguez's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 188. The Government has filed an opposition to Rodriguez's Motion. Dkt. 190. Rodriguez did not reply to the Government's opposition. The matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES the Motion.

## II. BACKGROUND

On January 18, 2023, after Rodriguez pleaded guilty to one count of conspiracy to distribute methamphetamine, the Court sentenced her to 60 months of incarceration with

four years of supervised release to follow. Dkt. 180. Rodriguez is currently incarcerated at Federal Correctional Institution Waseca ("FCI Waseca") in Waseca, Minnesota, with an anticipated release date of April 3, 2026. Dkt. 190, at 1.

On June 5, 2023, Rodriguez filed the instant Motion for Compassionate Release. Dkt. 188. As required, Rodriguez first petitioned the Warden at FCI Waseca for release. Dkt. 190-1. The Warden denied her request on May 23, 2023. Dkt. 190-2. Rodriguez bases her request on her desire to become the sole caregiver of her children to avoid their placement in foster care, a lack of access to mental health services at FCI Waseca, and compromised safety conditions due to a prison staff shortage. Dkt. 188, at 2–3. In support of her request, Rodriguez cites a news article describing an inspection of FCI Waseca conducted by the Department of Justice ("DOJ") in late January and early February of 2023. *Id.* Rodriguez provided no further evidence in support of her request.

### III. LEGAL STANDARD

Rodriguez seeks compassionate release under the First Step Act ("FSA"), amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances.[1] In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and

---

[1] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission.[2] *Id*. If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id*.; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

The FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In addition, "[e]xhaustion occurs when the BOP denies a defendant's [motion for compassionate release]." *United States v. Mondaca*, No. 89-cr-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

Rodriguez submitted a request for Compassionate Release with the Warden at FCI Waseca on April 4, 2023, and her request was denied on May 23, 2023. Dkts. 190-1, 190-2. Because Rodriguez filed her present Motion after her request to the Warden was denied,

---

[2] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

the Court finds that she has exhausted her administrative remedies.[3] Dkt. 188.

### B. Extraordinary and Compelling Reasons

Having determined that Rodriguez has exhausted her administrative remedies, the Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in her sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Rodriguez bears the burden of establishing that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. Apr. 6, 2020).

Before passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp.

---

[3] The Government argues Rodriguez failed to exhaust her administrative remedies because the basis of her request before this Court differs from the request made to the Warden (presumably because her Motion here is based on family circumstances, lack of rehabilitative services, and other prison conditions whereas her request to the warden was based solely on family circumstances). Dkt. 190, at 6–7. While some courts have found a defendant must exhaust administrative remedies for each basis set forth in a motion for compassionate release, *see, e.g., United States v. Bonventre*, 2020 WL 1862638, at *1 (S.D.N.Y. Apr. 14, 2020), this Court proceeds with the analysis to afford Rodriguez every benefit; and because she has, at a minimum, exhausted her remedies on the issue of family circumstances.

3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). This assumption is no longer consistent with the law under the FSA, which allows defendants to seek relief directly from the court. The Ninth Circuit has, therefore, determined that because "the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant", the guidelines in U.S.S.G. § 1B1.13 "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021).

Rodriguez argues that her children's need for a primary caregiver to avoid placement in foster care; a lack of adequate access to rehabilitative and psychological services at FCI Waseca; and the general conditions at FCI Waseca, including a shortage of correctional officers, constitute extraordinary and compelling circumstances necessitating compassionate release under the "medical condition" scenario in subdivision (A)[4] of

---

[4] The "medical condition of the defendant" may constitute an extraordinary and compelling reason for release where:

  (A)     Medical Condition of the Defendant.—

  (i)      The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

  (ii)     The defendant is—

U.S.S.G. 1B1.13, Application Note 1, the "family circumstances" prong in subdivision (C),

and the "other extraordinary or compelling reasons" prong in subdivision (D).

The Court first considers Rodriguez's medical condition.

Rodriguez argues that she needs mental health services and psychological care that

she cannot acquire in the custody of the BOP. Though she does not expressly say so, these

arguments are best analyzed under subsection (A), medical condition. Rodriguez reports

she has been diagnosed with bipolar disorder, PTSD, and depression. Dkt. 188, at 3.

Rodriguez has not provided medical records to support these assertions, nor does she

provide any specific facts tending to show she is unable to reasonably manage these

conditions while incarcerated. Rodriguez does cite a news article describing a DOJ

inspection review of FCI Waseca identifying staffing issues that caused delays in some

mental health care treatment for prisoners. *Id*. at 2. However, the underlying inspection was

conducted before Rodriguez was housed at FCI Waseca. Dkt. 190, at 10-11. And while the

inspection did identify some delays in treatment, treatment is still occurring, contrary to

Rodriguez's claim that she "cannot" acquire mental health services and psychological care

while in BOP custody. Dkt. 188, at 4. Furthermore, Rodriguez does not indicate that she

---

(I)      suffering from a serious physical or medical condition,

(II)     suffering from a serious functional or cognitive impairment, or

(III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the
environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1(A).

has sought mental health treatment while in custody and experienced delays herself, nor does she present evidence that her access to treatment would be any better if released. Therefore, the Court does not find an extraordinary and compelling reason for release under the FSA based on Rodriguez's self-reported medical conditions.

The Court next considers Rodriguez's family circumstances.

Rodriguez argues that the circumstances necessitate compassionate release so she can prevent her children's placement into foster care and serve as their primary caregiver under subsection (C) of the guidelines—family circumstances. Dkt. 188, at 1. Family circumstances that would amount to extraordinary and compelling reasons for early release are listed in the FSA as "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children," or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13, cmt. n.1(C).

Rodriguez states that Child Protective Services ("CPS") took temporary custody of her four children, one of whom Rodriguez says "is suspected to have a degree of autism," on May 19, 2023, after removing them from custody of Rodriguez's ex-husband. Dkt. 188, at 3. Rodriguez states CPS then placed two children with her mother and two with her sister, but later removed all four children and placed them with a teacher. *Id*. Rodriguez asserts she must become the sole caregiver of her children to avoid their being placed in foster care. *Id.*

Rodriguez has not provided any evidence to corroborate her assertions that her children need a primary caregiver or that they will be placed in foster care absent her

release. Furthermore, even if Rodriguez had met her burden of proof to show the need to care for her children under subsection (C), she has still failed to show that she would be legally entitled to custody of her children if released. In addition, Rodriguez, who has a history of substance abuse and addiction to methamphetamine, provides no evidence to show that if released, she would be a suitable caregiver for her children or that she would have an appropriate residence for her children to live in. In fact, Rodriguez states that if released, she would reside with her mother, but she alleges that CPS has already removed her children from placement in her mother's home once before. Dkt. 188, at 3. Because Rodriguez has provided no evidence to support her assertions about the custody of her children, her custodial rights over them, or her suitability to serve as their primary caregiver, the Court does not find an extraordinary and compelling reason for release under the FSA based on her family circumstances.

Rodriguez also briefly argues that because of pandemic related staffing shortages, the BOP is unable to provide adequate safety and protection in the prison environment. Dkt. 188, at 3.  Though she does not expressly say so, these arguments are best analyzed under subsection (D), where there may "exist[] in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, Application Note 1(D). Dkt. 37-2, at 2–3. In support of this assertion, Rodriguez cites the aforementioned news article describing a DOJ inspection of FCI Waseca, which states that at the time of the inspection, the prison was running with only 67% of its correctional service positions filled. Dkt. 188, at 2. However, the report also indicates that correctional staff has been augmented by temporary

MEMORANDUM DECISION AND ORDER - 8

assignment of non-correctional officer personnel into correctional officer positions, and that "FCI Waseca is generally well-run and both inmates and staff reported feeling safe." *Id*. Neither the report nor Rodriguez state any instances of correctional officers' failure to provide safety and protection. The Court does not find the shortage of correctional officers here an extraordinary or compelling reason justifying Rodriguez's release. *See United States v. Gurfinkiel*, 2023 WL 3801898, at *3 (S.D. Cal. Jun. 2, 2023) ("[T]he Court is not aware of any Ninth Circuit precedent or district court cases establishing that a prison staffing shortage is an extraordinary and compelling reason justifying release.").

Finally, the Government argues the 18 U.S.C. § 3553(a) factors weigh against Rodriguez's release at this time.[5] Dkt. 190, at 10-11. The Court agrees. As outlined in the Presentence Investigation Report, the vehicle Rodriguez was driving when she was arrested contained 185 grams of methamphetamine, 700 tablets containing Fentanyl, and 35.7 grams of marijuana. Dkt. 158, at 12. The 60-month sentence imposed by the Court reflects the seriousness of trafficking large quantities of the highly addictive and deadly substances

---

[5] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]

   (2) the need for the sentence imposed—

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

found in the vehicle Rodriguez was driving. Allowing release after serving just one-quarter of her sentence would diminish the deterrent effects of sentencing both for Rodriguez and for other large-scale drug traffickers. Additionally, Rodriguez has failed to provide indication of any rehabilitative efforts she has undertaken in support of her motion. And despite multiple probationary periods and incarcerations throughout her youth and as an adult, Rodriguez has continued to recidivate. The Court agrees with the Government that the public is currently best protected by Rodriguez's continued incarceration. As such, all four factors set forth in U.S.C. § 3553(a)(2) weigh against releasing Rodriguez early.

In sum, the Court finds that Rodriguez has exhausted her administrative remedies. However, she has failed to demonstrate an "extraordinary and compelling reason" for her release, and has failed to show that such a reduction in her sentence is consistent with the goals of the 18 U.S.C. § 3553(a) sentencing factors. Weighing all relevant factors, the Court cannot depart from its prior sentence and release Rodriguez at this time. Accordingly, the Court must DENY Rodriguez's motion.

## V. ORDER

The Court HEREBY ORDERS:

1. Rodriguez's Motion for Compassionate Release (Dkt. 188) is DENIED.

DATED: September 5, 2023

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 10